# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BILLINGS DIVISION

| | |
|---|---|
| CHRISTOPHER IVINS, | CV-12-103-BLG-SEH-CSO |
| Plaintiff, | |
| vs. | **ORDER ADDRESSING PLAINTIFF'S MOTION TO COMPEL** |
| CORRECTIONS CORPORATION OF AMERICA and DOES 1 through 3, | |
| Defendants. | |

Plaintiff Christopher Ivins ("Ivins") states two claims against Corrections Corporation of America ("CCA"): (1) wrongful discharge from employment; and (2) defamation/blacklisting. *ECF 1-1 (Complaint) at 3-4.*[1] Now pending is Ivins' Motion to Compel Discovery (*ECF 25, 26*), which CCA opposes (*ECF 27*).

## I.    BACKGROUND

Ivins alleges that he was hired by CCA in March 2004 and that he was named Assistant Warden at the Crossroads Correctional Center

---

[1]The ECF citation refers to the document as it is numbered in the Court's electronic filing system.  Citations to page numbers refer to those assigned by the ECF system.

("Crossroads") near Shelby, Montana, in August 2008. *ECF 5 at 2.* While performing his duties as Assistant Warden, he "experienced some resistance from key staff members" but the response from CCA was that Ivins should simply focus on his own job. *Id.* On January 26, 2011, he was called into a meeting with his superiors and served with a "Problem Solving/Disciplinary Notice." *Id. at 2-3.* On March 7, 2011, he was terminated from employment at Crossroads.

Alleging a wrongful discharge claim under MCA § 39-2-904, Ivins states that the termination was wrongful, not for good cause, and in violation of CCA's own written policies and procedures. *ECF 5 at 3-4.* Alleging a defamation/blacklisting claim under MCA §§ 39-2-802 and 803, Ivins states, on information and belief, that false and harmful information concerning his performance at Crossroads was disseminated to the public and within the corrections community. *ECF 5 at 4.* CCA denies these claims and asserts various affirmative defenses. *ECF 6.*

Ivins served written discovery requests upon CCA. CCA responded to Ivins' First Combined Discovery Requests on December 5, 2012 (*ECF 26 at 37-69*), and to Ivins' Second Discovery Requests on April 19, 2013 (*ECF 71-88*). Ivins contends that CCA failed to provide complete responses to

seven requests for production: Requests 1, 2, 13, 14, 16, 17, and 20.

CCA's primary objections to these seven discovery requests focus on two principal issues. First, CCA objected to requests that it contends seek documents protected by the attorney-client privilege and work product doctrines. CCA prepared a privilege log identifying the documents withheld. *See ECF 26 at 90-92*. Second, CCA objected to requests seeking records pertaining to Crossroads employees Cecily Simons and Kari Kinyon contending that the records are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and are protected from disclosure by the Montana Constitution Art. II, Sec. 10, right of privacy.

## II.  LEGAL STANDARD FOR MOTIONS TO COMPEL

A party may move to compel discovery responses when the party disagrees with the objections interposed by the other party and wants to compel more complete answers. *See Moreno Rivera v. DHA Global Forwarding*, 272 F.R.D. 50 (D. P.R. 2011). The Court has broad discretion to manage discovery. *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (citation omitted); *Jeff D. v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011) (*citing Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988)).

If no claim of privilege applies, the production of evidence can be compelled regarding any matter that is "relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1). The Court can limit discovery requests if it finds that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

A party must state objections with specificity. *See* Fed. R. Civ. P. 33(b)(4); 34(b)(2)(B) and (C). This Court's Local Rules also require specific reasons for discovery objections. Local Rules 26.3(a)(2)-(3) require that an objection "must be followed by a statement of reasons." Just stating the bare objection is not sufficient to preserve the objection. *See also Covad Communications Co. v. Revonet, Inc.*, 258 F.R.D. 17, 19 (D. D.C. 2009) (answers to discovery must be "true, explicit, responsive, complete, and candid").

The burden lies on the objecting party to show that a discovery request is improper. Where a party's objections are themselves vague and impermissibly overbroad, and no specifics are given, the objecting party

fails to carry its burden. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (holding that the party resisting discovery must show specifically how each discovery request is not relevant or how each question is overly broad, burdensome, or oppressive); *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 308-09 (N.D. Cal. 2005) (finding declaration of counsel insufficient to warrant protection of documents). Even when the required showing is not made, however, the Court still has the obligation to review the discovery requests to ensure that they are non-frivolous requests. *Moreno Rivera*, 272 F.R.D. at 57.

## III. <u>DISCUSSION</u>

### A. <u>Records Regarding Other Crossroads Employees</u>

The discovery requests at issue here are Requests for Production Nos. 13, 14, 16, and 17. With respect to Crossroads' Business Manager Cecily Simons, Ivins' requests for production and CCA's responses are as follows:

<u>**Request for Production No. 13**</u>: Please produce any and all portions of Cecily Simons' personnel file pertaining to: performance, training, any CCA investigation, complaints by and against Ms. Simons, applications for positions at CCA, promotions, any and all disciplinary actions and any and all communications between CCA and Ms. Simons that do not involve private medical or family matters.

<u>**Response:**</u> Objection. The information sought is overly broad,

unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, the information requested, even if it were relevant or reasonably calculated to lead to the discovery of admissible evidence is protected from disclosure by the Montana Constitution Art. II, Sec. 10's right of privacy. *See State v. Burns,* 830 P.2d 1318 (Mont. 1992)*; Montana Human Rights Div. v. City of Billings*, 649 P.2d 1283 (Mont. 1982).

**Request for Production No. 14:** Please produce any and all records and administrative files kept by CCA at Crossroads Correctional Facility and at any other CCA facility or location related to Cecily Simons pertaining to:

a. Any and all complaints by Cecily Simons against CCA employees, including complaints she initially made anonymously, but which CCA later learned Ms. Simons made;

b. Any and all complaints made against Cecily Simons;

c. Cecily Simons' performance;

d. CCA investigations conducted between August, 2008 and June, 2011 that were initiated by complaints from Cecily Simons or that were initiated by Complaints against Cecily Simons.

**Response**: Objection. The information sought is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, the information requested, even if it were relevant or reasonably calculated to lead to the discovery of admissible evidence is protected from disclosure by the Montana Constitution Art. II, Sec. 10's right of privacy. *See State v. Burns,* 830 P.2d 1318 (Mont. 1992)*; Montana Human Rights Div. v. City of Billings*, 649 P.2d 1283 (Mont. 1982).

*ECF 26 at 72-73.*[2]

---

[2]CCA did not separately identify its exhibits in the Court's docket. Local Rule 7.2(a) provides that motion exhibits "must be identified and

Ivins' Requests for Production Nos. 16 and 17 and CCA's objections thereto are identical, except they pertain to Crossroads' Quality Assurance Manager Kari Kinyon instead of to Cecily Simons.

### 1.  <u>Parties' Arguments</u>

Ivins argues that his requests for these documents and files pertaining to Kinyon and Simons are relevant and reasonably calculated to lead to the discovery of admissible evidence.  Ivins contends that Simons and Kinyon resisted actions he took as Assistant Warden.  Ivins explains that he complained to his superiors, Crossroads Warden Sam Law and CCA Division 4 Managing Director Jack Garner, but that CCA did nothing to remedy the situation.  Ivins suggests that Kinyon and Simons led "complaint campaigns" against him and against Warden Law and previous Assistant Wardens and Wardens at Crossroads.  *ECF 26 at 13.*  Ivins also suggests that Kinyon and Simons were disciplined following his termination because of their actions toward him.[3]

---

electronically filed so as to allow the Court and the parties to locate easily and refer unambiguously to a specific page of a specific exhibit." The Clerk's office may be consulted on proper procedures for filing exhibits.

[3]Although Ivins' affidavit recites in paragraph 1 that he has personal knowledge of the facts set forth therein, the Court places scant

Ivins argues that production of CCA records on Simons and Kinyon is essential to discovering the truth regarding their role in events leading up to his termination. He reasons that these files may contain information that bear on whether CCA had good cause for his termination or whether CCA followed its policies in its failure to address problems Ivins and previous Wardens or Assistant Wardens reported to CCA regarding Kinyon and Simons. *Id. at 14-15.*

Finally, Ivins argues that the right to privacy in Montana's Constitution does not apply to his discovery requests in the context of this action. *Id. at 15.* He argues that because he is a private party and not a state actor, the Montana Constitution's privacy provision is not implicated. Specifically, Ivins notes that the Montana Supreme Court has consistently held that "the privacy section of the Montana Constitution contemplates

---

reliance on paragraphs 11, 12, and 13 of his affidavit, wherein he vaguely states things that he "learned" – without explaining where he learned these things or from whom. ECF 26 at 98. Also, in paragraphs 11 and 12 of his affidavit, Ivins states that he "learned" that certain things "may have" happened. Id. Affidavits must be based on personal knowledge, not hearsay or suspicion. See Hexcel Corp. v. Ineos Polymers, Inc., 681 F3d 1055, 1063 (9th Cir. 2012); Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2003) (noting, in discussion of Fed.R.Civ.P. 56, that affidavits must not be "speculations, hunches, intuitions, or rumors").

privacy invasion by state action only[,]" *id. at 16* (citing *State v. Malkuch*, 154 P.3d 558, ¶ 12 (Mont. 2007) and *State v. Long*, 700 P.2d 153, 157 (Mont. 1985)), and that this Court's decisions are in accord. *Id.* (citing *Flagstone Development, LLC v. Joyner*, 2011 WL 6337646 (D. Mont.) (Cebull, J.) and *Weinheimer v. Omniflight Helicopters, Inc.*, CV 09-06-M-DWM (*ECF 20*) (Molloy, J.)). Because both parties in this action are private parties, Ivins argues, there is no state action and thus no privacy protection under Montana's Constitution. *Id. at 16-17.*

In response, CCA initially notes that it already has produced to Ivins "copies of the complaints it was able to locate made by Ms. Simons and/or Ms. Kinyon against Ivins, former Warden Sam Law and a complaint by Ms. Kinyon relating to another former CCA employee." *ECF 27 at 10.* But CCA also advances three arguments supporting its position that it properly withheld from production the remainder of the personnel files of Cecily Simons and Kari Kinyon.

First, CCA argues that Simons' and Kinyon's personnel records do not contain relevant information or information reasonably calculated to lead to the discovery of admissible evidence. CCA notes its willingness to provide the records for the Court's *in camera* review. But CCA also argues

that Ivins has taken inconsistent positions in this litigation respecting the potential relevance of information concerning events occurring before Ivins' termination. On one hand, CCA argues, Ivins has recognized that information about pre-termination investigations and disciplinary actions taken by CCA are not relevant to his claims, while on the other hand, Ivins seeks such information from CCA by requesting Simons' and Kinyon's personnel records. *Id. at 11-12.* Also, CCA notes that Ivins has suggested that Simons and Kinyon should have been disciplined instead of him for their alleged actions toward him, but CCA argues that documents reflecting this theory do not exist because Ivins' allegations are not true. *Id. at 12.*

Second, CCA argues that Montana law is unclear respecting whether Simons' and Kinyon's personnel records are protected by the right of privacy contained in Montana's Constitution. CCA argues that case law from the Montana Supreme Court has held that the privacy section in Art. II, Section 10 of Montana's Constitution applied only to state action. *Id. at 14* (citing *State v. Long*, 700 P.2d 153, 157 (Mont. 1985)). But, CCA notes, the Montana Supreme Court also has applied the privacy balancing test under Art. II, Section 10 in holding that personnel records were not subject

to disclosure in a case in which a private individual requested them because: 1) the employees whose records were sought had "an actual and not subjective privacy interest in their personnel records; and 2) the court would invade the individual employee's privacy interest without finding a compelling state interest in doing so[.]" *Id. at 14-16* (referring to *Engrav v. Cragun*, 769 P.2d 1227-29 (Mont. 1989)). CCA argues that the same reasoning is applicable in this case and that Ivins has shown no compelling state interest, or any interest, in requiring the production of the records he seeks. *Id. at 16-17.*

Third, CCA argues that, even if the Court were to determine that the records sought are relevant or reasonably calculated to lead to the discovery of admissible evidence and did not run afoul of the privacy section of Montana's Constitution, it is necessary that the records be produced subject to a protective order. CCA argues that "animosity apparent" between Ivins and Simons and Kinyon "shows quite plainly the potential for harassment and further hostility should private, personnel information be disclosed to Ivins." *Id. at 17-18.*

In reply, Ivins again argues that the records he seeks are relevant and reasonably calculated to lead to the discovery of admissible evidence.

He argues that "evidence shows that CCA executives had direct lines of communication with Simons and Kinyon prior to and after CCA's investigation into Ivins began[,]" and that "Simons and Kinyon were on a campaign to have Ivins and other Crossroads employees terminated using those open lines of communication with CCA executives – a campaign CCA executives ignored despite clear evidence." *ECF 28 at 2-8.* The information he seeks, Ivins argues, may provide evidence of CCA's actions or lack of actions pertaining to Kinyon and Simons and thus could lead to the discovery of admissible evidence respecting the actual reasons he was terminated. *Id.*

Second, Ivins argues that the cases CCA cites in arguing that Montana constitutional privacy law is unclear are distinguishable from this case. He argues that the cases upon which CCA relies involved the conflict between a citizen's right to privacy versus the public's right to know under Montana's Constitution. *Id. at 8-11.* Here, Ivins argues, he is not seeking information concerning Simons and Kinyon under the public right to know, but rather as an individual seeking information as a private party through discovery. Because he is not a state actor, Ivins argues, the constitutional right to privacy protection does not apply and the Court

should grant his motion seeking the information.  *Id*.

## 2.  <u>Analysis</u>

The Court turns first to the issue of whether the information Ivins seeks is "relevant to any party's claim or defense" or "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b).  The scope of discovery is, of course, broad and essentially encompasses any matter that bears on, or that reasonably could lead to other information that could bear on, any claim or defense.  *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005).

Here, the information Ivins seeks may be relevant to Ivins' termination.  Information contained in Simons' and Kinyon's personnel records could shed light upon Ivins' contention that CCA improperly terminated his employment without good cause.

Next, respecting CCA's argument that disclosure of Simons' and Kinyon's personnel records would violate the constitutional right to privacy under Art. II, section 10 of Montana's Constitution, the Court is not persuaded.  As this Court has noted, the Montana Supreme Court has clearly established that "the privacy section of the Montana Constitution <u>applies to state action only</u>."  *Weinheimer v. Omniflight Helicopters, Inc.*,

CV 09-06-M-DWM (Order filed Sept. 9, 2009) (*ECF 20*) (citing *State v. Malkuch*, 154 P.3d 558, 560 (Mont. 2007) and *State v. Long*, 700 P.2d 157 (Mont. 1985)) (emphasis in original). Thus, "there is no constitutional issue as to disclosure of records between private parties[ ]" absent a claim of privilege protection over the information. *Id.*

In the case at hand, Ivins is a private individual. No state action is involved. Also, CCA claims no type of privilege protection on behalf of Simons or Kinyon over their personnel records. And, as already determined, the information in the records is potentially relevant to Ivins' wrongful termination claim. Thus, the privacy provision in Montana's Constitution does not operate to preclude disclosure to Ivins of Simons' and Kinyon's personnel records. Therefore, Ivins' motion to compel is granted to the extent it relates to Requests for Production Nos. 13, 14, 16, and 17, subject to the limitation discussed below.

In reaching this conclusion, the Court makes two additional observations. First, the cases upon which CCA relies in asserting constitutional privacy protection of personnel records are distinguishable from the circumstances of the case at hand. Both *Engrav v. Cragun*, 769 P.2d 1224 (Mont. 1989) and *Citizens to Recall Mayor Whitlock v. Whitlock*,

844 P.2d 74 (Mont. 1992) involved parties seeking records in disputes that caused the Montana Supreme Court to balance the competing interests of the public's right to know and an individual's right to privacy found in the Montana Constitution. The decisions in those cases do not govern the dispute in this case, which does not involve a balancing of Simons' and Kinyon's right to privacy with the public's right to know. As noted, Ivins is a private individual who presumably seeks the information only for purposes of this lawsuit.

Second, even though it has determined that the information sought is relevant and that its disclosure to Ivins will not violate Simons' and Kinyon's constitutional right to privacy, the Court nevertheless is mindful of the information's inherently private and potentially sensitive nature. For this reason, under the authority of Fed. R. Civ. P. 26(c), the Court will direct that information disclosed in response to Requests for Production Nos. 13, 14, 16, and 17 be handled in accordance with the Stipulation and Protective Order filed in this case on May 8, 2013. *ECF 22.* The parties are admonished that any violation of the Protective Order may result in the imposition of appropriate sanctions.

**B.** **Records Concerning Investigations, Complaints, and Ivins' Grievance of His Termination**

The discovery requests at issue here are Requests for Production Nos.

1, 2, and 20.  Ivins' requests, and CCA's responses, are as follows:

**Request for Production No. 1**: Please produce any and all records, documents, and correspondence, including any and all written and/or electronic communications, for each investigation listed and/or described in Interrogatory No. 4.  Please see definition of "document" above.

> **Response**: Objection.  The information requested related to these confidential investigations seeks discovery of documents that are protected by the attorney-client privilege, work product doctrine and/or is confidential and not intended for public disclosure.  Documents which are confidential, but not privileged or protected by work product will be produced only upon entry of an appropriate protective order.

**Request for Production No. 2**: Please produce any and all records and  documents regarding each complaint you listed and/or described in Interrogatory No. 5.  Please see definition of "document" above.

> **Response**: Objection.  Many of the requested documents are protected by attorney-client privilege and or work-product.  Many of the remaining responsive documents are confidential and will only be produced upon entry of an appropriate protective order.  Other responsive documents are attached hereto and identified with Bates labels CCA00483 – CCA 000510.

**Request for Production No. 20**: Please produce all documents, files and records kept by CCA pertaining to all phases of Chris Ivins' grievance of his termination, including, but not limited to:

<ol type="a">
<li>Each and every electronic and written communication, including but not limited to, emails, written notes memorandums, and reports, by any CCA employee or any person hired by CCA to investigate Chris Ivins' grievance;</li>
<li>All files kept by CCA at any facility regarding Chris Ivins' grievance process;</li>
<li>All reports and investigative reports regarding the grievance process;</li>
<li>All oral, written and electronic, statements taken by, or provided to, anyone investigating Chris Ivins' grievance.</li>
</ol>

**Response**: Please see documents already provided. In addition, please see documents attached and identified with Bates labels CCA001925 — CCA001973.

*ECF 26 at 48-49, 53, and 77.*

Counsel conferred respecting Ivins' requests and CCA's responses. CCA subsequently agreed to produce some documents pertaining to CCA's investigations into Ivins, withheld other documents pertaining to its employment actions, and produced a privilege log. *Id. at 10-11, and 90-93* (privilege log).

### 1. **Parties' Arguments**

Ivins advances three arguments seeking the Court's order compelling complete responses to the subject requests for production. First, he argues that CCA waived attorney-client privilege when it placed documents concerning its employment actions at issue by raising the defenses that it

terminated Ivins for good cause and properly followed its policies and

grievance procedures in doing so. *Id. at 19-24.*

Second, Ivins argues that CCA cannot claim attorney-client privilege

protection for documents created when its general counsel was acting as a

business advisor and not in the capacity of a legal advisor. *Id. at 24-30.* If

CCA's general counsel was "obtaining facts and potentially applying facts

to CCA policy to determine or recommend if employment action against

[Ivins] was warranted[,]" Ivins argues, such actions were "business

decision[s]" and "[a]n attorney acting in that capacity is acting as a

business advisor. Therefore, the attorney-client privilege does not apply

because CCA's general counsel was not acting in his capacity as legal

advisor." *Id. at 30* (citations omitted).

Third, Ivins argues that withheld documents concerning CCA's

employment actions are not protected by the work product doctrine. Ivins

argues that the privilege log identifies some documents respecting

investigations of him that predate both the "problem solving notice" or

"PSN" that he received on January 19, 2011, and his subsequent

termination and grievance. Thus, Ivins argues, the documents were

created before CCA anticipated litigation and, therefore, are not protected

under the work product doctrine. *Id. at 30-34.*

In response, CCA first notes that in producing nearly 6,000 documents, it withheld only the following documents claiming attorney-client privilege and/or work product protection: (1) documents bearing Bates numbers 537, 546, 567, 568, 569, and 2116–2131; (2) a single paragraph protected by attorney-client privilege in an otherwise produced document that bears Bates number 2016; and (3) two other documents, bearing Bates numbers 5834 and 5835, which are protected attorney-client communications related to another lawsuit between the ACLU and CCA that is not relevant to this action. *ECF 27 at 18.* CCA urges the Court to accept these withheld documents, together with their corresponding privilege log, *in camera* to allow the Court to determine whether CCA properly asserted attorney-client privilege and work product protection. *Id. at 18-19.*

In addition, CCA first argues that it did not waive attorney-client privilege, as Ivins suggests, by placing employment actions at issue. CCA argues that it was Ivins, and not CCA, that "raised the various employment actions as issues in this case[.]" *Id. at 19-21.*

Second, CCA argues that it did not withhold documents on the basis

of attorney-client privilege or under the work product doctrine where its in-house counsel acted as a business advisor rather than as legal counsel. *Id. at 21-25.* Rather, CCA argues, all withheld documents warrant protection as attorney-client communications and/or as attorney work product. *Id.*

### 2. <u>Analysis</u>

As an initial matter, the Court concludes that CCA did not waive attorney-client privilege, as Ivins argues, by placing employment actions at issue. Reviewing the pleadings, the Court concludes that it was Ivins, and not CCA, who raised the employment actions in his Complaint, as follows: (1) that CCA failed to follow its own policies and procedures in disciplining Ivins in January 2011, *Cmplt.* (*ECF 5) at ¶ 14*; (2) that CCA terminated Ivins without good cause, *id. at ¶ 13*; and (3) that there existed alleged problems with the grievance process in which Ivins participated, *id. at ¶ 14*[4]. CCA's Answer and discovery responses merely respond to issues

---

[4]CCA acknowledges that it raised as an affirmative defense its position that Ivins failed to completely exhaust mandatory grievance procedures. *ECF 27.* CCA also notes, however, that it has abandoned this defense and has admitted that Ivins exhausted the grievance procedure. *Id.* (citing CCA's Response to Request for Admission No. 9 (*ECF 27-3 at 1-2*)). Thus, the defense is moot and Ivins' reliance on it in asserting CCA's privilege waiver fails.

raised by Ivins in his Complaint and do not raise new issues that operate to waive CCA's reliance on attorney-client privilege or work product protection.

Next, the Court must consider whether CCA properly relied on attorney-client privilege and/or work product protection in withholding the subject documents. Without the opportunity to examine the documents at issue, the Court cannot thoughtfully decide this issue. Thus, the Court will direct CCA to submit the subject documents for the Court's *in camera* review.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, IT IS ORDERED that Ivins' motion to compel (*ECF 25*) is GRANTED to the extent it relates to Ivins' Requests for Production Nos. 13, 14, 16, and 17. As noted herein, information disclosed in response to Requests for Production Nos. 13, 14, 16, and 17 must be produced by August 9, 2013, and handled in accordance with the Stipulation and Protective Order filed in this case on May 8, 2013 (*ECF 22*). **The parties are again admonished that any violation of the Protective Order may result in the imposition of appropriate sanctions.**

IT IS FURTHER ORDERED that the Court RESERVES ruling on the remainder of Ivins' motion to compel subject to *in camera* review of documents responsive to Requests for Production Nos. 1, 2, and 20 as identified in CCA's Privilege Log (*ECF 26 at 90-93*), except for the first three items listed in the Privilege Log, which are not at issue. On or before August 9, 2013, CCA must submit the subject documents to the Court for *in camera* review.

DATED this 26th day of July, 2013.


/S/ Carolyn S. Ostby
United States Magistrate Judge